UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

DENNIS G. ROSEMA,

                   Plaintiff,                  Case No. 1:08-CV-161

v.                                           Honorable Richard Alan Enslen

JOHN E. POTTER,

                   Defendant.

_____/

## OPINION

Plaintiff Dennis G. Rosema filed the instant action alleging constructive discharge, harassment, discrimination and retaliation, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq.; the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12132 et seq.; Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794; and the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601 et seq. Plaintiff also alleged common law tort claims for disability discrimination, negligent and intentional infliction of emotional distress, negligent hiring and negligent supervision under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671 et seq. Plaintiff originally sued only Defendant John E. Potter, Postmaster General for the United States Postal Service. The matter presently is before the Court on two motions: (1) Defendant's Motion to Dismiss or for Summary Judgment; and (2) Plaintiff's Motion to Amend the Complaint. For the reasons that follow, both motions are granted.

## I.  MOTION TO AMEND

After Defendant filed his motion to dismiss or for summary judgment, Plaintiff stipulated to the dismissal of his claims under the ADA (Count II) and the FMLA (Count III), together with and the common-law claims of discrimination and harassment (Count IV), negligent infliction of emotional distress (Count VII), and negligent hiring, retention or supervision (Count VIII) alleged under the FTCA.  The Court granted the Stipulation and entered a Partial Order of Dismissal with prejudice on July 14, 2008.  As a consequence, the only claims from the original Complaint remaining before the Court are Plaintiff's Counts One and Five, alleging violations of Title VII and the Rehabilitation Act, and Count Six, alleging intentional infliction of emotional distress under the FTCA.

Plaintiff now moves to amend the complaint to eliminate the dismissed claims, to add the United States as a party defendant and to assert a common-law claim of intentional infliction of emotional distress, without reference to the FTCA.  Because Defendant has not yet filed an answer to the original complaint, Plaintiff is permitted to amend his pleadings as a matter of course.  *See* FED. R. CIV. P. 15(a)(1)(A) ("A party may amend its pleading once as a matter of course . . . before being served with a responsive pleading . . . ."); FED. R. CIV. P. 7(a) (defining "pleadings").  As a consequence, Plaintiff's motion to amend is granted.

## II.  MOTION TO DISMISS

Defendant brought his motion to dismiss or for summary judgment under Federal Rules of Civil Procedure 8(a), 12(b)(1), 12(b)(6) or 56(c).  He originally asserted that Counts One and Five should be dismissed under Rule 12(b)(1) or (6) and that Counts Two, Three, Four, Six, Seven and

Eight should be dismissed under Rule 12(b)(6) only.  Finally, he argued that if the Court did not dismiss Count Three under Rule 12(b)(6), it should do so under Rule 8(a) or Rule 56(c).

In light of the stipulated dismissal of Counts Two, Three, Four, Seven and Eight and the filing of the Amended Complaint, Defendant's motion appears now to be limited to a motion to dismiss the remaining Title VII (original Count One) and Rehabilitation Act (original Count Five) claims under Rule 12(b)(1) for lack of subject matter jurisdiction or Rule 12(b)(6) for failure to state a claim, together with a motion to dismiss the intentional infliction of emotional distress claim (original Count Six) under Rule 12(b)(6) for failure to state a claim.

A.   Facts

The following facts are taken, in the light most favorable to Plaintiff, from the amended complaint[1] and from Plaintiff's express concessions in response to Defendant's motion.  Plaintiff was employed as a custodian for the United States Postal Service ("USPS") for over 20 years. Plaintiff was responsible for cleaning and maintaining postal facility buildings and grounds.  His duties included cleaning, scrubbing, waxing and polishing floors, washing walls and windows, dusting, performing lawn care, cleaning sidewalks and driveways, and loading and unloading supplies and equipment.  His union job description required that he be able to stand, stoop, bend and stretch for long periods of time, and be able to manually lift and carry objects weighing 45 pounds or more.

---

[1]Because the Court has granted Plaintiff's Motion to Allow the Plaintiff to Amend His Complaint, the facts relevant to Defendants' Motion to Dismiss or for Summary Judgment are taken from Plaintiff's First Amended Complaint.  With minor exceptions, the factual allegations of the Amended Complaint are essentially identical to those contained in the original complaint.

Plaintiff began to develop health problems in 2000.  In 2003, the USPS granted Plaintiff's request for a light duty janitorial assignment due to his back problems and physical restrictions. Plaintiff had the following limitations at that time: he could only stand for 45 minutes at a time or for a total of four hours; he could bend and stoop occasionally; he could push and pull only up to 20 pounds; and he could only do occasional lifting of up to 20 pounds.  Plaintiff alleges that, after accepting a light duty job on September 5, 2003, Plaintiff requested union intervention because Al Vander Vosse, a maintenance manager at the Muskegon Post Office, refused Plaintiff's request that his work restrictions be approved by his family physician rather than Dr. Tractman, upon whom the USPS relied.  The union request allegedly was never addressed by the USPS.

In June 2004, Plaintiff fractured his back.  He was granted FMLA leave to recover from his injury.  While on leave, Plaintiff suffered a brain aneurysm requiring surgery.  As a result of both conditions, he was unable to return to work for a total of nearly six months.  On September 4, 2004, while still on sick leave, Plaintiff complained to his supervisor that he had not been mailed copies of postings for custodial/laborer positions that were available.  Plaintiff claims that he was denied the right to bid on those jobs.

In early 2005, Plaintiff obtained FMLA leave and missed work for about three months due to a liver abscess and bacterial infection.  On April 11, 2005, Plaintiff returned to work.  His restrictions required that, during the first two weeks, he was limited to working four hours per day, after which he was to work six hours per day for another two weeks before returning to work full time on May 9, 2005.  After receiving the restrictions, Vander Vosse ordered Plaintiff to return to work immediately without restrictions for his back.  Plaintiff filed a union complaint with his

steward, Bob Swanson, who told Plaintiff to do the best he could.  Swanson allegedly did not investigate Plaintiff's complaint.

On June 16, 2005, Plaintiff asked Bill Griffiths, another union steward, why Plaintiff was not on the overtime list for doing floors on the weekends, and he asked Griffiths to address the overtime issue with Vander Vosse.  Griffiths allegedly put his hands around Plaintiff's neck and began to shake him.  On September 17, 2005, a meeting about the choking incident was held between Plaintiff, Vander Vosse and Bill Griffiths.  Griffiths made an oral apology to Plaintiff, but the USPS allegedly took no further disciplinary action.

In November or December 2006, Plaintiff was approached by "Vita," the carrier supervisor, who allegedly shook Plaintiff.  Plaintiff alleges that, when he reported the incident to his union representative, he was intimidated by the representative and no action was taken on his complaint.

On January 17, 2007, Plaintiff sought and received FMLA leave following receipt of an excuse from his medical provider to cover a three-day absence for pain related to a prior angiogram.  Plaintiff alleges that, while he was on leave, he was told by Lori Maycroft, a human resources employee, that he could not return to work until January 30, 2007 after the Postmaster had returned from vacation because the USPS lacked information about what job duties he could perform.  On January 18 or 19, 2007, Plaintiff submitted a note from his neurologist stating that Plaintiff had permanent physical restrictions including a prohibition against excessive bending or twisting and mopping.  Plaintiff was told that his documentation was still insufficient and that his supervisors were unclear about which of his job duties he could perform.  He again was told not to come back to work until the Postmaster returned on January 30, 2007.

- 5 -

On February 5, 2007, Pine Rest Grand Haven Clinic submitted a medical note stating that Plaintiff needed to be excused from work for one month, until March 5, 2007. After the USPS requested clarification about the diagnosis and ability to work, the physician reported that Plaintiff suffered from major depression. Plaintiff's doctor sent two further notes, extending the leave request to April 5, 2007 and then to June 30, 2007. Plaintiff concedes that the USPS approved FMLA leave beginning January 17, 2007 through April 5, 2007.

On March 6, 2007, Plaintiff applied for immediate early disability retirement. The application summarized Plaintiff's medical problems and declared that, although Plaintiff had been on light duty, he was not always able to do his job because of back pain and frequently had been unable to work because of headaches. He also alleged that he did not sleep well, was unable to sit for very long, and had difficulty getting out of bed. On April 17, 2007, Plaintiff went on disability retirement.

Nearly five months after applying for disability retirement, on August 9, 2007, Plaintiff contacted an Equal Employment Opportunity ("EEO") counselor to complain of age and disability discrimination. Plaintiff alleged that he was discriminated against when USPS did not allow him to return to work on January 19, 23 and 30, 2007. Plaintiff sought mediation, which was held in September but not satisfactorily resolved. On November 16, 2007, Plaintiff filed a formal EEO complaint alleging discrimination from January 19 through February 13, 2007. The EEO office rejected Plaintiff's complaint as untimely because Plaintiff did not contact an EEO counselor until approximately 177 days after the last date of alleged discrimination, well beyond the 45 days required under 29 C.F.R. § 1614.105(a)(1).

B.      Standards of Review

"Where subject matter jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990); *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986). The Court is empowered to resolve factual disputes when subject matter jurisdiction is challenged. *Moir*, 895 F.2d at 269; *Rogers*, 798 F.2d at 918 (contrasting analysis under Rule 12(b)(6) where existence of genuine issues of material fact warrants denial of the motion to dismiss). The Court must recognize that in response to defendant's Rule 12(b)(1) motion, the plaintiff's burden of proving federal question jurisdiction is "not onerous." *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996) (citing *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996)). In order to survive a Rule 12(b)(1) motion, a plaintiff need show "only that the complaint alleges a claim under federal law, and that the claim is 'substantial.'" *Musson*, 89 F.3d at 1248. A complaint is "substantial" unless "prior decisions inescapably render [it] frivolous." *Id.*

Under Rule 12(b)(6), a complaint may be dismissed if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitled him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). The standard requires that a "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Glassner v. R.J. Reynolds Tobacco Co.*, 223 F.3d 343, 346 (6th Cir. 2001). The complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). However, the court need not

- 7 -

accept as true legal conclusions or unwarranted factual inferences.  *Lewis v. ACB Business Serv., Inc.*, 135 F.3d 389, 405 (6th Cir. 1998).  A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint.  *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993).

        C.     <u>Title VII and the Rehabilitation Act</u>

        Plaintiff alleges that he was subjected to discrimination, harassment and retaliation in violation of Title VII and the Rehabilitation Act.  Defendant argues that both claims must be dismissed because Plaintiff failed to timely exhaust his administrative remedies.  Defendant contends that Plaintiff's failure to meet the exhaustion requirements either deprives the Court of jurisdiction or prevents Plaintiff from showing an essential element of his claim.

        Before filing a Title VII or Rehabilitation Act claim in federal court, a plaintiff is required to exhaust his administrative remedies.  *See Steiner v. Henderson*, 354 F.3d 432, 434-35 (6th Cir. 2003) ("In permitting federal employees to sue under Title VII, Congress conditioned the government's waiver of sovereign immunity upon a plaintiff's satisfaction of rigorous administrative exhaustion requirements and time limitations.") (internal quotations omitted); *see also Smith v. U.S. Postal Serv.*, 742 F.2d 257, 258-62 (6th Cir. 1984) (by statutory incorporation, same exhaustion procedures apply to Rehabilitation Act as to Title VII, including 29 C.F.R. §§ 1614.105(a) et seq.).  Under 29 C.F.R. § 1614.105(a)(1), a federal employee claiming discrimination is required to contact an EEO counselor within 45 days of the alleged discrimination.  *Id.*; *see also Horton v. Potter*, 369 F.3d 906, 910 (6th Cir. 2004).  Failure to timely contact an EEO counselor is cause for dismissal of both the administrative complaint and the federal civil action.  *See Steiner*, 354 F.3d at 435 (citing

*Brown v. General Servs. Admin.*, 425 U.S. 820, 835 (1976), and 29 C.F.R. § 1614.107(a)(2));
*Horton*, 369 F.3d at 910-11.

Plaintiff does not dispute that he was required to exhaust his administrative remedies before filing suit and that he did not contact an EEO counselor within the 45 days set forth in the regulations. He argues, however, that he is entitled to equitable tolling of the limitations period because he was actively and reasonably pursuing informal remedies with his supervisors.

The 45-day limitations period is not jurisdictional and can be tolled where principles of equity require it. *See Zipes v. Transworld Airlines, Inc.*, 455 U.S. 385, 393 (1982); *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 95 (1990); *Steiner*, 354 F.3d at 435. However, both the Supreme Court and the Sixth Circuit repeatedly have made clear that equitable tolling should be used "only sparingly." *Irwin*, 498 U.S. at 95, *quoted in Steiner*, 354 F.3d at 438; *Leeds v. Potter*, 249 Fed. App. 442, 447 (6th Cir. 2007). Tolling generally is reserved to situations in which the plaintiff has diligently pursued his legal rights and has been prevented from exhausting by some external factor, such as his adversary's misconduct or a defective pleading. *See Irwin*, 498 U.S. at 96. The Sixth Circuit has applied a five-factor analysis to determine whether equitable tolling should apply: (1) whether the plaintiff had actual notice of the time restraint; (2) whether he had constructive notice of the time restraint; (3) the degree of diligence the plaintiff exerted in pursuing his legal rights; (4) the degree of prejudice to the defendant; and (5) the reasonableness of the plaintiff's ignorance of the time constraint. *Dixon v. Gonzalez*, 481 F.3d 324, 331 (6th Cir. 2007); *Steiner*, 354 F.3d at 435; *EEOC v. Kentucky State Police Dep't*, 80 F.3d 1086, 1094 (6th Cir. 1996); *Andrews v. Orr*, 851 F.2d 146, 151 (6th Cir. 1988).

The Sixth Circuit standard has been applied to equitable tolling across the spectrum of federal cases, including habeas corpus cases. *See Dunlap v. United States*, 250 F.3d 1001, 1007 (6th Cir. 2001). However, in two recent habeas cases, the Supreme Court has held that *Irwin*, 498 U.S. at 96, requires that a plaintiff make a two-element showing to obtain equitable tolling: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005) (citing *Irwin*, 498 U.S. at 96); *Lawrence v. Florida*, 127 S. Ct. 1079, 1085 (2007) (reiterating the *Pace* standard). Arguably, in light of the Supreme Court's recent distillation of the *Irwin* standard, the Sixth Circuit's five-part standard no longer remains good law in any federal context.

The Court need not decide which standard applies, however, because Plaintiff cannot make the requisite showing under either test. With respect to the Sixth Circuit standard, Plaintiff makes no serious argument about the first, second and fifth factors.[2] Plaintiff does not claim to have been unaware that he was required to contact an EEO counselor within 45 days of any discrimination. Instead, he argues that he "may or may not have been aware" of the requirement. (Pl.'s Mot. to Reply to Def.'s Mot. to Dismiss or for Summ. J. at 13, Dkt. No. 10.) Moreover, regardless of whether he had actual notice, Plaintiff has not disputed the EEO finding that an EEO poster was on display at Plaintiff's facility, which contained notice about the requirement.[3] As a result, Plaintiff clearly had either actual or constructive notice of the 45-day time limit under factors one and two.

_____

[2]Indeed, Plaintiff makes no effort to directly address any of the factors supporting equitable tolling under either test. Instead, he ignores the existence of those requirements and merely argues why the cases cited by Defendant should be distinguished. None of Plaintiff's proposed distinctions are relevant to the holdings or reasoning of the cited cases.

[3]The EEO finding is attached as Exhibit 1 to the original Complaint, and it is therefore incorporated as part of the pleadings under FED. R. CIV. P. 12(b). (*See* Compl., Ex. 1 at 3.)

The fifth factor, the reasonableness of Plaintiff's ignorance of the requirement, is therefore irrelevant in light of the undisputed notice.

In addition, Plaintiff fails to demonstrate the necessary diligence under the third factor. Plaintiff summarily argues that he complained to his supervisors or union representatives about the alleged failures by the USPS to honor his restrictions in September 2003 and January 2007. He argues that, because his supervisors did not act on his complaints, they somehow "stonewalled" him into not enforcing his rights. Plaintiff's argument does not support a finding of diligence. Regardless of whether Plaintiff was diligent about making *informal* complaints, Plaintiff did nothing to pursue his formal administrative remedies. Moreover, nothing about his informal complaints to supervisors or their inaction on those complaints prevented Plaintiff from contacting an EEO counselor. Plaintiff's supervisors in no way interfered with Plaintiff's exercise of his rights. *See Steiner*, 354 F.3d at 436-37 (holding that plaintiff was not induced or tricked into letting the deadline pass, despite plant manager's encouragement to first seek redress from her immediate supervisor). The mere fact that Plaintiff elected to do nothing but continue his informal process cannot obviate the clear Congressional requirement that a federal employee complaining of discrimination file a formal complaint within 45 days. Plaintiff's interpretation of diligence would eviscerate the rule.

The remaining factor, the prejudice to the Defendant, also weighs against Plaintiff. Delay in the reporting of discrimination makes it difficult for a defendant to conduct timely investigations, gather contemporaneous information, and implement appropriate remedies that could mitigate any damages experienced by Plaintiff. Moreover, even if the fourth factor were to weigh in favor of Plaintiff, "[t]he Supreme Court has held that the absence of prejudice to the defendant employer 'is not an independent basis for invoking the doctrine and sanctioning deviations from established

- 11 -

procedures.'" *Steiner*, 354 F.3d at 437 (quoting *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984). Plaintiff therefore fails to demonstrate entitlement to equitable tolling under the Sixth Circuit standard.

Similarly, Plaintiff cannot show that he meets the two-part standard set forth by the Supreme Court in *Pace*, 544 U.S. at 418: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way. As the Court previously has concluded, Plaintiff has failed to demonstrate that he pursued his rights diligently. In addition, Plaintiff has identified no extraordinary circumstance that prevented him from contacting an EEO counselor until at least 177 days after the last alleged discrimination.

Because Plaintiff did not timely file his complaint of discrimination with the EEO, his claims under Title VII and the Rehabilitation Act must be dismissed for lack of proper exhaustion.

D.      Intentional Infliction of Emotional Distress

Plaintiff alleges that Defendant Potter and the United States, through their employees, subjected him to the common-law tort of intentional infliction of emotional distress. In his initial Complaint, Plaintiff alleged that he was entitled to bring his claim against Defendant Potter under the Federal Tort Claims Act. Defendant raised a variety of arguments in his motion for summary judgment as to why Plaintiff's claim should be dismissed: (1) the United States (not the USPS) is the only proper defendant in a claim brought under the FTCA; (2) Plaintiff failed to exhaust his administrative remedies under the FTCA; and (3) even if Plaintiff had exhausted his administrative remedies, the United States has not waived sovereign immunity with respect to Plaintiff's intentional infliction of emotional distress claim.

With respect to Defendant's first argument, Plaintiff conceded that he named the wrong defendant, and he requested leave to amend to add the United States as a party defendant. As previously discussed, the Court has allowed filing of the Amended Complaint. Plaintiff's Amended Complaint now names the United States as an additional defendant. However, Plaintiff appears to have abandoned his reason for adding the United States in the first place, having dropped any reliance on the FTCA and raising his intentional infliction of emotional distress claim as one of common law only. Plaintiff's amendments therefore are both contradictory and confusing.

By amending his complaint to drop the claim under the FTCA, Plaintiff has abandoned the sole potential vehicle for his claim of intentional infliction of emotional distress against the United States or Defendant Potter. The FTCA specifically provides that it is the exclusive remedy for torts caused by the negligent or wrongful conduct of government employees acting within the scope of their employment, and the United States is the sole appropriate defendant in such actions. *See* 28 U.S.C. § 2679(b); *see also Good v. Ohio Edison Co.*, 149 F.3d 413, 418 (6th Cir. 1998). Jurisdiction to hear tort claims against the United States is conferred solely by 28 U.S.C. § 1346(b)(1), and that jurisdiction expressly is subject to the provisions of the FTCA. *See id.* (*"Subject to the provisions of chapter 171 of this title* . . . the district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment . . . .") (emphasis added). Plaintiff therefore has no common law remedy against the United States for intentional infliction of emotional distress, except through the FTCA.

- 13 -

In light of Plaintiff's apparent confusion, the Court will assume that Plaintiff did not intend to drop his claim under the FTCA and will consider Defendant's remaining arguments about the viability of the FTCA claim.  Defendant argues that Plaintiff's claim should be dismissed because he has failed to exhaust his administrative remedy.  *See McNeil v. United States*, 508 U.S. 106, 113 (1993) (affirming the lower court's decision to dismiss an unexhausted FTCA claim for lack of jurisdiction).  In response, Plaintiff argues that, because Congress has given the USPS the power to sue and be sued in its own name, Plaintiff was not required to meet the exhaustion requirement of 28 U.S.C. § 2675(a).  Contrary to Plaintiff's position, however, the Supreme Court squarely has recognized that, "[a]lthough the Postal Reorganization Act generally waives the immunity of the Postal Service from suit by giving it the power to sue and be sued in its official name, the statute also provides that the FTCA 'shall apply to tort claims arising out of activities of the Postal Service.'" *Dolan v. U.S. Postal Serv.*, 546 U.S. 491, 484 (2006).  In addition, the FTCA itself expressly states:

> The authority of any federal agency to sue and be sued in its own name shall not be construed to authorize suits against such federal agency on claims which are cognizable under section 1346(b) of this title, and the remedies provided by this title in such cases shall be exclusive.

28 U.S.C. § 2679(a).  Plaintiff's claim of intentional infliction of emotional distress clearly is a tort claim described by the FTCA.  Under the cited provisions, in order to assert a tort claim based on the acts of federal employees acting during the course of their employment, Plaintiff was required to bring his claim under the FTCA, and therefore was required to exhaust his administrative remedies.

Plaintiff next argues that his untimely EEO complaint was sufficient to satisfy the exhaustion requirement of the FTCA.  Under the FTCA, a plaintiff may not pursue a remedy for damages

- 14 -

against the United States unless the plaintiff files a timely administrative claim and the claim either was denied on the merits or six months passed without a final resolution of the claim.  28 U.S.C. § 2675(a).  Such an administrative claim must be in writing, must request a sum certain and must describe the tortious incident in issue.  *See* 28 C.F.R. § 14.2(a) ("[A] claim shall be deemed to have been presented when a Federal agency receives from a claimant . . . written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident.").

Plaintiff's EEO complaint alleged constructive discharge based on discrimination that occurred only in 2007.  (Compl., Ex. 2.)  Plaintiff added a page containing "examples of the way I was treated as a postal employee," which referenced the June 2005 and December 2006 shaking incidents, but he did not allege that he was either filing a complaint about those incidents or seeking damages from them.  Moreover, Plaintiff did not allege that he had been subjected to conduct amounting to intentional infliction of emotional distress.  Further, while Plaintiff listed his economic losses allegedly caused by his discriminatory constructive discharge, he sought no damages for emotional distress, much less any "sum certain" as damages for emotional distress.  For all these reasons, even assuming Plaintiff's EEO complaint was filed with the proper administrative agency under the FTCA, *see Martinez v. Reno*, No. 3:97-CV0813-P, 1997 WL 786250, at *3 (N.D. Tex. Dec. 15, 1997) (questioning whether the filing of an EEO complaint constitutes "presentment to the 'appropriate agency'"), the complaint was insufficient to exhaust his tort claim under the FTCA. *See Totten v. Norton*, 421 F. Supp. 2d 115, 123 (D.D.C. 2006) (presenting an EEO complaint about reprisal discrimination is not sufficient to exhaust claim of intentional infliction of emotional distress under the FTCA, even where EEO complaint made passing reference to "compensation for

- 15 -

humiliation, cost and attorney fees"); *Folley v. Henderson*, 175 F. Supp. 2d 1007, 1017 (S.D. Ohio 2001) (holding in the alternative that plaintiff had failed to exhaust administrative remedies on tort claims including intentional infliction of emotional distress, notwithstanding her filing of an EEO complaint for sex and race discrimination); *Fairley v. Potter*, No. C-01-1363 VRW, 2003 WL 403361, at *6 (N.D. Cal. Feb. 13, 2003) (plaintiff's EEO complaint about sexual discrimination was insufficient to exhaust tort claim of sexual battery or intentional infliction of emotional distress). Because Plaintiff has failed to exhaust his claim of intentional infliction of emotional distress under the FTCA, this Court lacks jurisdiction over his claim and the action should be dismissed.

Moreover, even had Plaintiff properly exhausted his claim of intentional infliction of emotional distress, the tort claim would be barred by sovereign immunity. The United States is amenable to suit only insofar as it has consented to be sued. *See United States v. Mitchell*, 463 U.S. 206, 212 (1983). Any statute waiving the United States' sovereign immunity is strictly construed. *See United States v. King*, 395 U.S. 1, 4 (1969). Congress' waiver of sovereign immunity under the FTCA for common torts was expressly limited by 28 U.S.C. § 2680. Under § 2680(h), the waiver of sovereign immunity does not apply to"[a]ny claim arising out of assault [or] battery . . . ." 28 U.S.C. § 2680(h); *United States v. Shearer*, 473 U.S. 52, 54-55 (1985). Although Plaintiff's Amended Complaint is unclear about the precise course of conduct on which he bases his intentional infliction of emotional distress claim, he clarifies his claim in his response to Defendant's motion to dismiss or for summary judgment, stating, "Plaintiff is bringing an Intentional Infliction of Emotional Distress claim against his manager and union rep because they grabbed him and shook him violently." (Pl.'s Mot. to Reply to Def.'s Mot. to Dismiss at 19, Dkt. No. 10.) The Supreme Court squarely has held that a claim "arises out of" an assault or battery when such assault or battery

is the immediate cause of the alleged injury, regardless of the specific legal theory of liability. *Shearer*, 473 U.S. at 55 (concluding that a negligent supervision claim arose out of an assault or battery). Here, Plaintiff expressly states that the basis of his emotional distress was the intentional grabbing and shaking by his manager and union representative. Under the Court's reasoning in *Shearer*, Plaintiff's claim unquestionably arises out of an assault or battery. As a consequence, the United States has not waived its sovereign immunity with respect to the claim.

### III. CONCLUSION

For all the foregoing reasons, Plaintiff's Motion to Amend the Complaint is granted and Plaintiff's First Amended Complaint is accepted for filing. Defendant's Motion to Dismiss or for Summary Judgment is granted and Plaintiff's Amended Complaint is dismissed in its entirety with prejudice. A Judgment consistent with this Opinion will issue.


                                                      /s/ Richard Alan Enslen
DATED in Kalamazoo, MI:                          RICHARD ALAN ENSLEN
       September 26, 2008                        SENIOR UNITED STATES DISTRICT JUDGE

- 17 -